**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY REID | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al. | : | No. 04-2924 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                           **April 9, 2009**

This is a counseled petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Anthony Reid ("Reid"), an individual currently incarcerated in the State Correctional Institution at Greene. For the reasons that follow, I recommend that the petition be denied.

## I.     FACTS AND PROCEDURAL HISTORY

On April 19, 1990, after a jury trial before the Honorable John J. Poserina of the Court of Common Pleas of Philadelphia County, Reid was convicted of first degree murder, criminal conspiracy, and possessing an instrument of crime.[1] On April 20, 1990, Judge Poserina imposed

---

[1] The following facts were set forth by the Pennsylvania Superior Court:

> On March 13, 1989, co-defendants Kevin Bowman and defendant Anthony Reid shot and killed Neil Wilk[in]son, age 19. Also wounded was Darryl Woods [('Woods')]. The killers and victims were each members of the Junior Black Mafia.
>
> At approximately 3:00 a.m. that morning the two defendants and the two victims secured a shotgun and a pistol from the house in which it was stored and proceeded by automobile to 1001 Ogden Ave., Philadelphia, PA. Bowman and Reid convinced Wilk[in]son and Woods that they were all going to make a visit to persons[] who lived at that address and who owed them money. After they arrived at the location, Wilk[in]son and Woods proceeded up a stairway to the

the mandatory sentence of life imprisonment for the first degree murder conviction, after the jury

deadlocked on the death penalty.[2]  Thereafter, Reid filed a direct appeal in the Pennsylvania

Superior Court raising the following claims:

1.   Trial Court error for admitting prior inconsistent statements of witness Darryl Woods as substantive evidence;

2.   Trial Court error for allowing evidence of membership in the Junior Black Mafia ("JBM");

3.   Trial Court error for denying motion to sever;

4.   Trial Court error for admitting evidence of an unrelated murder; and

5.   Prosecutorial misconduct.

On October 17, 1993, the Superior Court denied Reid's appeal and affirmed the judgment of

sentence.  Commonwealth v. Reid, 638 A.2d 270 (Pa. Super. 1993) (table), attached as Resp't

Ex. "B."  Reid raised the same claims in his petition for allowance of appeal in the Pennsylvania

Supreme Court, which denied review on March 22, 1994.  Commonwealth v. Reid, 644 A.2d 734

(Pa. 1994) (table).

On December 12, 1996, Reid filed a pro se petition under the Pennsylvania Post

Conviction Relief Act ("PCRA") 42 Pa. Con. Stat. § 9541, et seq.  Counsel was appointed to

represent Reid and filed an amended petition asserting the following claims:

---

second floor of this housing project building.  The two defendants fired a shotgun and a ten millimeter pistol at both victims.  The two defendants fled the scene.

Commonwealth v. Reid,  No. 689 EDA 2002 (Pa. Super. July 21, 2003), attached as Resp't Ex. "D."

[2]  The trial court entered a "finding of guilt without further imposition of penalty" for the charges of criminal conspiracy and possessing an instrument of crime.  Commonwealth v. Reid, No. 8907-008-12 (Ct. of Comm. Pl., Phila., Co. Jan. 21, 1993), attached as Resp't Ex. "A."

1.      Ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel for failing to object to the introduction of evidence that Reid was in possession of a gun used in an unrelated murder;

2.      Ineffective assistance of trial counsel for failing to object to the admission of prior inconsistent statements of Darryl Woods as substantive evidence;

3.      Ineffective assistance of trial counsel for failing to request a no-adverse inference jury instruction;

4.      Ineffective assistance of appellate counsel for failing to assert a claim of ineffective assistance of trial counsel for failing to object to jury instructions on accomplice liability;

5.      Ineffective assistance of appellate counsel for failing to assert a claim of ineffective assistance of trial counsel for failing to object to jury instructions on burden of proof;

6.      Prosecutorial misconduct;

7.      Ineffective assistance of trial counsel due to a conflict of interest;

8.      Ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel for failing to request a change of venue;

9.      Ineffective assistance of appellate counsel for failing to assert a claim of ineffective assistance of trial counsel for opening the door to the admission of evidence regarding the Junior Black Mafia;

10.     Ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel for failing to assert that Commonwealth witness Darryl Woods was induced and received benefits for his testimony;

11.     Ineffective assistance of appellate counsel for failing to assert a claim of ineffective assistance of trial counsel for failing to prepare for cross examination of witness Daniel McKay; and

12.     Ineffective assistance of trial counsel for failing to request a jury instruction warning against a substitution of proof of guilt.

3

On May 30, 2002, Reid's petition was dismissed without a hearing.  Commonwealth v. Reid, No. 8907, 008-012 (Ct. of Common Pleas, Phila. Co. May 30, 2002), attached as Resp't Ex. "C."  Reid filed an appeal of the dismissal of his PCRA petition ,and the Pennsylvania Superior Court affirmed the decision of the PCRA court in an unpublished memorandum on July 21, 2003.  Commonwealth v. Reid, 832 A.2d 542 (Pa. Super. 2003) (table), attached as Resp't Ex. "D."  The Pennsylvania Supreme Court denied allocatur on March 4, 2004.  Commonwealth v. Reid, 845 A.2d 817 (Pa. 2004) (table).

On July 1, 2004, Reid filed a pro se petition for a federal writ of habeas corpus.  On July 30, 2004, counsel was appointed by the Court to represent Reid, and a "Consolidated Amended Petition For A Writ of Habeas Corpus" was filed on March 21, 2005.  Respondents filed a response to the amended petition on July 21, 2005.

Thereafter, on August 12, 2005, the District Court granted Reid's request that his habeas petition be placed in civil suspense while he returned to the state courts in an attempt to pursue further collateral relief in a second PCRA petition.  (Doc. #22).  On April 29, 2005, the PCRA court dismissed Reid's petition as untimely.  On June 2, 2006, the Superior Court affirmed the dismissal of this second PCRA petition as untimely.  Commonwealth v. Reid, No. 1610 EDA 2005 (Pa. Super. June 2, 2006) (table).  The Pennsylvania Supreme Court denied review on February 14, 2007.

On May 11, 2007, Reid filed a motion to reactivate and amend his habeas petition.  (Doc. #23).  On May 25, 2007, the District Court issued an Order removing Reid's habeas petition from suspense and returning it to the active docket.  (Doc. # 24).  Then, on May 30, 2007, the Court granted Reid's unopposed motion to amend his habeas petition.  (Doc. #25).  Reid filed a

Supplement to his Consolidated Amended Petition for Writ of Habeas Corpus on October 1, 2007.  Respondents filed a response to Reid's supplement on January 11, 2008.  Reid's claims currently before the Court therefore include the allegations contained in his Consolidated Amended Petition for Writ of Habeas Corpus:

1.  Prosecutorial misconduct;

2.  Trial court error in improperly instructing the jury as to the definition of accomplice liability;

3.  Trial court error in improperly instructing the jury as to the definition of reasonable doubt;

4.  Ineffective assistance of counsel for failing to object to jury instructions on accomplice liability;

5.  Ineffective assistance of counsel for failing to object to jury instructions on reasonable doubt; and

6.  Ineffective assistance of trial counsel for failing to question witness Daniel McKay about a prior identification of another man as the shooter in an unrelated murder.

And the additional claims contained in his Supplement to Amended Petition for Writ of Habeas Corpus:

7.  Newly discovered evidence;

8.  Trial court error in admitting "massive amounts of hearsay and unsubstantiated fact" that permitted the Commonwealth to impeach their own witness;

9.  Ineffective assistance of counsel for failing to rebut the testimony of police investigators with Darryl Woods hospital records;

10. Trial court error for admitting the statements of Darryl Woods as substantive evidence;

11.     Trial court error for admitting evidence of other crimes.

Respondents argue that Reid is not entitled to federal habeas relief because the claims contained in his original habeas petition are either unexhausted or without merit.  Respondents further argue that Reid is not entitled to relief on the claims contained in his supplement to his amended petition because these claims are time-barred under the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") one year statute of limitations.

## II.____STANDARD OF REVIEW

The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts.  Woodford v. Visciotti, 537 U.S. 19, 24 (2002); Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).  Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts, 228 F.3d at 196.

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

6

Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams, 529 U.S. at 389-390). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Hameen, 212 F.3d at 235 (citing Williams, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 389).

III.    DISCUSSION OF CLAIMS IN CONSOLIDATED AMENDED PETITION   FOR WRIT OF HABEAS CORPUS

A.    Prosecutorial Misconduct

_____In his first claim for relief Reid raises numerous allegations of prosecutorial misconduct. Federal habeas relief may be granted, based upon allegations of prosecutorial misconduct, when the prosecutor's acts "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Greer v. Miller, 483 U.S. 756, 765 (1987). In order to constitute a due

process violation, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97 (1976)). It is not sufficient to prove that the prosecutor's remarks were "undesirable or inappropriate," Lesko v. Lehman, 925 F.2d 1527 (3d Cir. 1991) or even "universally condemned," Todaro v. Fulcomer, 944 F.2d 1079 (3d Cir. 1991). The petitioner must show that he was denied a fair trial. Smith v. Phillips, 455 U.S. 209, 221 (1982). In evaluating whether the prosecutor's misconduct rose to the level of a constitutional violation, a federal habeas court is required to examine the prosecutor's conduct in the context of the whole trial. Greer, 483 U.S. at 765-766. The conduct complained of must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights. Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974).

As a general proposition, Reid alleges that the prosecutor committed misconduct when he engaged in "improper arguments and statements" during trial. See Pet'r Cons. Amend. Pet. at p. 8. In support of this claim, Reid supplies this Court with seventy pages of examples of what he considers to have been the improper arguments and statements of the prosecutor. See Id. at p. 8-78. The seventy pages Reid has devoted to the claim of prosecutorial misconduct consists, for the most part, of various quoted fragments pulled from the notes of testimony. In addition, Reid has also included in these seventy pages a catalog of the number of objections made at trial, and a catalog of the curative instructions given by the trial court judge.[3] Unfortunately, many of these

---

[3] See, e.g., fragments of the prosecutor's opening statement, Petr's Cons. Amend. Pet. at 15-22; fragments of the prosecutor's cross examination of Darryl Woods, Id. at 23-36; fragments of an argument that occurred in chambers regarding a prosecution offer of proof, Id. at 42-45; fragments of the prosecutor's examination of Daniel McKay, Id. at 47-51; a summation of the number of objections made at trial, Id. at 52-67; a summation of the number of instructions given

extensive fragments and summations of objections and trial court instructions pulled from the

notes of testimony are presented with little or no explanation or legal analysis.  There is no

discussion or specific legal analysis presented in regard to each alleged incident of prosecutorial

misconduct.  Many of the fragments pulled from the notes of testimony are introduced with a

numbered paragraph heading (see e.g. Id. at p. 15, para. 37, Prosecutor's first remarks regarding

the purpose of opening statements; see also Id. at p. 16, para. 40, Initial remarks regarding prior

inconsistent statements received as substantive evidence) that purports to explain its reason for

inclusion as an allegation of prosecutorial misconduct.  Notwithstanding this, Reid's argument is

essentially a general claim of prosecutorial misconduct which is explained only in the

"Conclusion" section of this claim.  Id. at p. 78.  In this conclusion, Reid states:

> During the trial, the prosecutor made improper statements and
> arguments that were designed to and did divert the jury from fairly
> considering the evidence and to instead base its decision on
> improper matters.  The prosecutor repeatedly asked leading,
> suggestive questions of his own witnesses; repeatedly echoed
> testimony that was harmful to [Reid] and the credibility of defense
> witnesses; deliberately injected impermissible and gratuitous
> considerations into the trial; overreached with every witness about
> [Reid's] associations with unsavory people; overreached with
> critical witnesses despite prior adverse rulings from the court;
> commented adversely and in violation of a court order concerning
> a witness's prior assertion of his 5th Amendment privilege; and
> vouched for the credibility of witnesses.

Id.  Further, although Reid  presented claim of prosecutorial misconduct to the state courts on

appeal, the claim as presented in the instant petition is substantially more extensive than the

claim presented to the state courts.  Consequently, to evaluate Reid's present claim of

prosecutorial misconduct, this Court is required to wade through extensive passages of notes of

---

by the trial court judge.  Id.

testimony that Reid appears to believe are relevant, in an attempt to identify petitioner's specific claims, and to determine how they potentially resulted in a due process violation.[4]  Donnelly, 416 U.S. at 639.

Through this exercise, I have determined that Reid has presented five claims of prosecutorial misconduct, each of which are discussed below.

### 1.    Prosecutors References to the Junior Black Mafia

Reid claims that the prosecutor committed misconduct when he embarked on a consistent and apparently deliberate campaign of abusing the trial court's ruling regarding the admission of evidence of Reid's membership in the JBM.  In reviewing this claim on direct appeal, the state court found that evidence of Reid's involvement in the JBM was relevant and admissible, and the Superior Court, in adopting the trial court's opinion as its own, agreed.  The state court, relying upon the Pennsylvania Supreme Court's decision in Commonwealth v. Gwaltney, 442 A.2d 236, 240-41 (Pa. 1982), reasoned that evidence of Reid's membership in the JBM was properly admitted for two purposes.  The court first found that this evidence was properly admitted because evidence of the relationship between parties or the conduct or circumstances surrounding the parties is relevant to establish the existence of a conspiracy.  Secondly, the court found that evidence of Reid's involvement in the JBM was admissible to show motive, intent, plan, design, or ill will.  Commonwealth v. Reid, No. 8907-008-012 at p. 10 (Ct. of Comm. Pl., Phila., Co. Jan. 21, 1993), attached as Resp't Ex. "A;" see also Commonwealth v. Reid, No. 399 Phila. 1993

---

[4]  I note that in his Consolidated Amended Petition Reid's claim of prosecutorial misconduct, making up seventy pages of his ninety brief, is numbered as one claim. Respondents, in crafting their response to Reid's petition, have determined that in their analysis Reid is asserting seven claims of prosecutorial misconduct.

(Pa. Super. Oct. 14, 1993) (adopting trial court opinion as its own), attached as Resp't Ex. "B."

As an initial matter, the admissibility of evidence is governed by state law.  As the United States Supreme Court has stated "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Consequently, the trial court's decision to admit evidence relating to Reid's membership in the JBM is binding on a federal habeas court, absent a Constitutional violation.  See Id.; see also Bisaccia v. Attorney Gen. of N.J., 623 F.2d 307, 312 (3d Cir. 1980) ("evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial").

I find the state court's determination of this issue to be reasonable, and conclude that the admission of evidence related to Reid's membership in the JBM fails to rise to the level of a Constitutional violation.  Id.  The Commonwealth's theory of the case was that JBM members Neil Wilkinson and Darryl Woods were shot by fellow JBM members Anthony Reid and Kevin Bowman because certain members of the JBM believed that Wilkinson and Woods were talking to the police about illegal gang activities.  Thus, the prosecutor made reference to the JBM to establish a relationship between the victims and Reid, and to establish Reid's motive for shooting Wilkinson and Woods.  In reviewing the notes of testimony, this Court finds that the prosecutor did not embark on a consistent and deliberate campaign of disregarding the trial court's rulings by making repeated references to Reid's membership in the JBM.  The prosecutor properly confined his remarks regarding the JBM to showing a connection between the victims and Reid, and to establishing Reid's motive for shooting the victims.  Moreover, when viewed in the

11

context of the entire trial the prosecutor's references to the JBM were not sufficiently prejudicial as to violate Reid's due process rights.  <u>Greer</u>, 483 at 765-766.   <u>Donnelly</u>, 416 U.S. at 639.

### 2.    Prosecutor's References to other crimes

Reid next alleges that the prosecutor committed misconduct when he made reference to, and produced evidence of, the fact that the gun that was used to murder Neil Wilkinson and shoot Darryl Woods was the same gun that Reid used six days earlier in the shooting death of Michael Waters.  The Commonwealth sought to present this evidence at trial in order to establish that Reid had access to the gun used to murder Neil Wilkinson, given that he had used the same gun six days earlier in the shooting and murder of Michael Waters.

In rejecting this claim on direct appeal, the state court found that the evidence presented at trial regarding the murder of Michael Waters was "admissible not merely to show that Reid had access to the gun, but also as circumstantial evidence of guilt."  <u>Commonwealth v. Reid</u>, No. 8907-008-12 at p. 7 (Ct. of Comm. Pl., Phila., Co. Jan. 21, 1993), attached as Resp't Ex. "A." Consequently, the state court found that since this evidence was properly admitted, "the prosecutor's use of evidence that Reid used the same ten millimeter gun, which shot Neil Wilkinson, during the murder of a sixteen year old child one week before was not misconduct."[5] <u>Id.</u>

---

[5]  The Pennsylvania Supreme Court also considered this issue in Reid's appeal of his conviction for the murder of Michael Waters.  <u>Commonwealth v. Reid</u>, 626 A.2d 118 (Pa. 1993). In that appeal, Reid argued that the trial court erred in admitting evidence of the murder and shooting of Neil Wilkinson to establish that Reid was the shooter in the Waters murder.  <u>Id.</u> at 120.  The court found that the evidence was admissible to establish Reid's identity as the shooter because it placed a weapon used in both murders in Reid's hands, and because empty shell casings from the same weapon were found at both murder scenes.  <u>Id.</u>

As noted above, the admissibility of evidence is governed by state law.  Estelle, 502 U.S. at 67-68.  Consequently, the trial court's decision to admit evidence relating to the shooting and murder of Michael Waters is binding on a federal habeas court absent a Constitutional violation. See Id.; see also Bisaccia v. Attorney Gen. of N.J., 623 F.2d at 312.  I find the state court's evidentiary ruling to be reasonable.  The admission of evidence related to the shooting and murder of Michael Waters did not deprive Reid of fundamental fairness in his trial.  Id.  I agree with the state court's finding that evidence produced in relation to the shooting of Michael Waters was properly admitted to establish that Reid had access to the gun used in both murders. I also agree that this evidence was properly admitted to show circumstantial evidence of guilt.

Because I have determined that evidence of the fact that the gun that was used to murder Neil Wilkinson and shoot Darryl Woods was the same gun that was used to murder Michael Waters was properly admitted at trial, the prosecutor did not commit misconduct in making reference to this evidence.  Consequently, I conclude that the prosecutor did not commit misconduct when he elicited testimony and produced evidence to establish that the gun used to murder Neil Wilkinson and shoot Darryl Woods was the same gun used six (6) days earlier by Reid in the shooting and murder of Michael Waters.  There was no denial of Reid's right to due process and I recommend that this claim be denied.  Greer, 483 U.S. at 765.

### 3.    Prosecutor's Cross Examination of Darryl Woods

In his next claim, Reid argues that the prosecutor committed misconduct when he improperly questioned prosecution witness and surviving victim, Darryl Woods.  Specifically, Reid complains that the prosecutor committed misconduct when he questioned Woods about the substance of the statements he had given to police investigators after Woods testified that the

statements at issue were not made by him.  This claim is based upon the fact that, at trial, Woods denied giving <u>any</u> statements to police investigators, and denied signing his name to such statements, even though his signature appeared on individual pages of the statements.

In discussing the issue of the admissibility of Darryl Woods' statements as substantive evidence, the Pennsylvania Supreme Court stated that under Pennsylvania law, prior inconsistent statements may be used as substantive evidence when that "statement is a contemporaneous verbatim recording of the witness' statement."  <u>Commonwealth v. Reid</u>, 626 A.2d 118, 121 (Pa. 1993).  The court then went on to find that Woods' statements met this standard and were admissible as substantive evidence because:

> Woods was confronted with his prior statements in open court. These statements, taken on March 22, 1989, March 23, 1989 and April 8, 1989, were recorded verbatim by police officers contemporaneously with Woods' making the statements while he was incapacitated in the hospital after the shooting. Because of medical procedures, Woods was unable to sign two of the three statements, but he did sign each page of the one taken on March 23, 1989. Because [] Woods' prior inconsistent statements were contemporaneously recorded verbatim statements, they were properly admitted as substantive evidence of the truth of the matters asserted therein.

<u>Id.</u>  Consequently, the Pennsylvania Supreme Court dismissed as meritless Reid's claim that it was error to admit Woods' statements as substantive evidence.  <u>Id.</u>

I conclude that the state court's determination of this issue is reasonable, and did not result in an outcome that is contrary to clearly established federal law, nor is it an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  As a result, since Woods' statements were properly admitted at trial as substantive evidence, the prosecutor did not commit misconduct in questioning Woods about the substance of his statements.  For these reasons, I recommend that

14

this claim be denied.

### 4.      Prosecutor's Cross Examination of Daniel McKay

Reid next alleges that the prosecutor committed misconduct during his questioning of witness Daniel McKay.  This claim is similar to Reid's earlier claim challenging the introduction of evidence regarding the shooting and murder of Michael Waters that occurred six days before the shooting and murder at issue in the instant matter.  In this claim, Reid argues that the prosecutor committed misconduct when he improperly questioned Daniel McKay about the circumstances surrounding the murder of Michael Waters.  Specifically, Reid asserts that the trial court ruled that questioning regarding the shooting and murder of Michael Waters would be limited to the "facts" of the crime and that the prosecutor, ignoring this ruling, proceeded to elicit the details of the crime.  See Petr's Amend. Cons. Pet. at p. 46-47.

I conclude that Reid is not entitled to relief on this claim for the same reasons discussed above in Reid's earlier claim relating to the introduction of evidence concerning the murder of Michael Waters.  I have concluded that evidence pertaining to the murder of Michael Waters was properly admitted at trial, and I also conclude that the prosecutor did not commit misconduct during his questioning of Daniel McKay.  Further, contrary to Reid's statement that the "Judge had no control over the lawyers [and] the evidence was idiosyncratically managed" I find that the trial court repeatedly and properly sustained defense counsel's objections to questions that he considered to be improper.  See Pet'r Cons. Amend. Pet. at p. 77.  Moreover, the trial court explicitly and clearly instructed the jury that evidence regarding the murder of Michael Waters was admitted for a limited purpose and:

> was not offered to prove any prior criminal conduct.  It was offered
> to prove prior access to and circumstantially, and whether or not
> you believe that evidence permitted you should infer that he had
> access to or possession of a specific firearm.  You are not to
> believe that because the prior incident may have occurred that
> therefore the Defendant Anthony Reid, is guilty of the offenses for
> which he is at trial here.  In other words, the limitation about the
> first incident came strictly for whether or not you believe that it
> showed by circumstantial evidence access to or possession of a
> specific firearm.

.

(N.T. 4/18/1990 at 92).  Then, after instructing the jury two more times that evidence of the

Waters murder was admitted for a limited purpose the trial court stated:

> [r]emember I said it three times so far.  Again Reid is not on trial
> for the events of 3-7-89 [the murder of Michael Waters] in this
> case, it is only for circumstantial value, if any, which may help you
> decide if he also had the gun on the day that he is now on trial
> before you.

(N.T. 4/18/1990 at 95).  Because the trial court properly admitted evidence regarding the Waters

murder, consistently sustained defense counsel's objections to improper questioning, and

specifically instructed the jury that evidence of Waters murder was to be considered for a limited

purpose it can not be said that the prosecutor's conduct so infected the trial with unfairness as to

make the resulting conviction a denial of due process.  <u>Greer</u> 483 U.S. at 765; <u>Donelly</u>, 416 U.S

at 643.  Consequently, I conclude that Reid is not entitled to relief on this claim, and I

recommend that it be dismissed as meritless.

### 5.    Denial of Presumption of Innocence

In his final claim of prosecutorial misconduct, Reid alleges that the prosecutor's actions

during trial violated his right to be presumed innocent under the Sixth and Fourteenth

Amendments to the United States Constitution.  Respondents argue that this claim has never

been presented to the state courts on appeal, and is thus unexhausted and procedurally defaulted. I agree that this claim has not been presented to the state courts on appeal and is being presented for the first time in the instant petition.

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.  See 28 U.S.C. § 2254(b).  A petitioner will not be deemed to have exhausted available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts"); Picard v. Connor, 404 U.S. 270 (1971).  "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights."  Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)).  The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

As discussed above, Reid raised a general claim of prosecutorial misconduct in the state courts.   However, he failed to advance the same claim presented here, that his right to be presumed innocent under the Sixth and Fourteenth Amendment to the United States Constitution was violated.  In order for a claim to be exhausted "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and the same method of legal analysis must be available to the state courts as will be employed by the federal

court."  Evans v. Court of Common Pleas, Del. Co., 959 F.2d 1227, 1231 (3d Cir. 1992).

Because Reid failed to present this specific claim to the state courts based upon the

Constitutional violation he has advanced here, this claim is unexhausted for purposes of federal

habeas review.  See 28 U.S.C. § 2254 (requiring habeas petitioner to exhaust claims by

presenting them to each level of the state courts empowered to consider them).

However, I find that exhaustion should be excused pursuant to 28 U.S.C. § 2254(b)(1),

because a return to state court would be futile due to "an absence of available State corrective

process."  Lines v. Larkin, 208 F.3d 153, 162 (3d Cir. 2000).  The only way for Reid to present

this claim in the state court at this time is by filing another PCRA petition.  See Lines, 208 F.3d

at 164 & n.17; see also Fidtler v. Gillis, 1999 WL 596940, at *3 (E.D. Pa. Aug. 9, 1999) (citing

42 Pa. Cons. Stat. Ann. § 9542 (1998)) (the PCRA is the sole means of obtaining collateral relief

from convictions, encompassing and replacing all other forms of relief, including habeas corpus).

However, any such petition would be time-barred by the PCRA's statute of limitations.  Pursuant

to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1)

year of the date the conviction at issue becomes final.  42 Pa. Cons. Stat. Ann. § 9545(b)(1); see

also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that

the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth

v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the

conclusion of direct review, including discretionary review in the Supreme Court of

Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking

the review.  42 Pa. Cons. Stat. Ann. § 9545(b)(3).  The Pennsylvania Supreme Court denied

Reid's petition for allocatur on March 4, 2004, and Reid failed to petition for a writ of certiorari

18

in the United States Supreme Court; therefore, his conviction became final on June 4, 2004,

when the time for seeking an appeal in the United States Supreme Court expired.  Because

Reid's conviction became final over four and a half years ago, the PCRA statute of limitations

would preclude Petitioner from presenting the instant claim in a PCRA petition.  42 Pa. Cons.

Stat. Ann. § 9545(b)(1); see generally Campbell v. Meyers, 1999 WL 793509, at *3 (E.D. Pa.

Oct. 6, 1999) (finding that the Pennsylvania state courts "consistently and regularly" apply the

PCRA statute of limitations in all cases).  As a result, exhaustion would be futile and is excused.

Although I recommend that exhaustion be excused, Reid is considered to have

procedurally defaulted this claim because state procedural rules bar him from seeking further

relief in state courts.  Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).  A federal court may

not consider the merits of such claims unless the petitioner establishes "cause and prejudice" to

excuse his default.  Id. (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  Here, Reid has

not shown cause for the default or actual prejudice resulting therefrom, nor has he demonstrated

that a fundamental miscarriage of justice has occurred through a showing of "actual innocence."

See Schlup v. Delo, 513 U.S. 298 326-327 (1995).  Therefore, this claim should be dismissed as

procedurally defaulted.

**B.      Trial Court Error for Failing to Properly Instruct the Jury as to Accomplice
          Liability**

Reid next argues that the trial court's instruction to the jury regarding accomplice liability

was "confusing when it relegated the proof of specific intent to kill - an element of first degree

murder - to proof of 'a crime' or 'the crime.'"  See Pet'r Cons. Amend. Pet. at p. 84.  Reid posits

that "there is a reasonable likelihood that the jury applied the court's instructions in a way that

relieved the prosecution of establishing beyond a reasonable doubt that [he] individually harbored the specific intent to kill." Id. at 84-85.

In reviewing a conviction resulting from a state court trial based upon a challenge to jury instructions, a federal court must first establish that the challenged instruction violated some constitutional right and is not merely undesirable, erroneous, or universally condemned. Cupp v. Naughton, 414 U.S. 141, 146 (1973). The relevant question is whether the "instruction by itself so infected the trial that the resulting conviction violated due process." Jacobs v. Horn, 395 F.3d 111 (3d Cir. 2005) (citing Martin v. Warden, Huntingdon State Correctional Inst., 653 F.2d 799, 809 (3d Cir. 1981)); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Cupp, 414 U.S. at 146-147. In determining the effect of the challenged instruction on the validity of Petitioner's conviction, a reviewing court must accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in context of the overall charge. Id. (citing Boyd v. United States, 271 U.S. 104, 107 (1926)).

In reviewing this claim on collateral appeal, the Pennsylvania Superior Court found that the trial court's instruction "adequately and correctly set forth the requirements for imposing accomplice liability for first degree murder" and, contrary to Reid's assertion that the instruction was confusing, the court found that the instruction was "abundantly clear." See Commonwealth v. Reid, No. 689 EDA 2002, at p. 8-9 (Pa. Super. July 21, 2003) attached as Resp't Ex. "D."

Upon review of the charge at issue and the relevant state law, I cannot conclude that the trial court's instruction, considered in its entirety, rendered Reid's trial fundamentally unfair. Cupp, 414 U.S. at 146. In giving its instruction to the jury regarding accomplice liability, the trial court stated:

> You may find a defendant guilty of a crime without finding that he personally performed the act required for the commission of that particular crime.  A defendant is guilty of a crime if he is an accomplice of another person who does commit that crime.  He is an accomplice if with the intent of promoting or facilitating the commission of a crime he either solicits, commands, encourages, requests the other person to commit it or aids or agrees to aid or attempts to aid the other person in planning or committing the crime.  You may find the defendant guilty of a crime on the theory that he was an accomplice, as long as you're satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of a person who committed it.

(N.T. 4/18/1990 at p. 97).  The crux of Reid's argument is that the instruction on accomplice liability invited the jury to convict him of first degree murder without finding that he had the specific intent to kill required by Pennsylvania law.  See 18 Pa. Cons. Stat. Ann. § 2502(a) (Murder of the first degree); see Commonwealth v. Chester, 587 A.2d 1367 (Pa. 1991); Commonwealth v. Huffman, 638 A.2d 961 (Pa. 1994).  Reid argues that this is so because the trial court, in its instruction, refers to "a crime" rather than the specific crime of first degree murder.  Under 18 Pa. Cons. Stat. Ann. § 306(c), a person can be an accomplice with respect to the commission of a particular crime only if that person has "the intent of promoting or facilitating" the commission of "that crime."[6]

Read as a whole, the jury charge clearly indicates that the trial court instructed the jury that an accomplice is one who intends to promote, facilitate, or aid in the commission of a crime;

---

[6]  The accomplice liability statute, 18 Pa. Cons.Stat. Ann. § 306(c) (West 1989), provides that a person is an accomplice of another person in the commission of an offense if:
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>> (i) solicits such other person to commit it; or
>> (ii) aids or agrees or attempts to aid such other person in planning or committing it.

21

and that accomplices must share the intent to commit a crime.  Notwithstanding the fact that the trial court referred to "a crime" rather than the specific crime of first degree murder, I find Reid's argument that there is a "reasonable likelihood" that the jury misapplied the court's instructions to be unavailing.  See Pet'r Cons. Amend. Pet. at p. 84.  I also do not find that there is a "distinct possibility" that Reid was convicted of first degree murder without a finding that he had the specific intent to kill.  Id. at p. 85.  The trial court clearly instructed the jury that "intent" is a required element for a finding of guilt for accomplice liability.  (N.T. 4/18/1990 at p. 97).  The trial court also extensively and in great detail discussed the element of intent as it applied to first degree, second degree, and third degree murder.  (N.T. 4/18/1990 at p. 80-91).  Further, Reid was convicted of criminal conspiracy, as well as first degree murder.  In instructing the jury on the criminal conspiracy charge, the trial court stated "you must be satisfied that the crime of murder has been committed" and "that the defendant agreed, that is each individual defendant agreed with at least one other person that they or one of them would engage in conducting what constitutes the crime of murder.  Secondly, that the defendant did so make the agreement with the intent of promoting or facilitating the commission of a crime of murder."  (N.T. 4/18/1990 at p. 97-98).  Consequently, in convicting Reid of the criminal conspiracy charge, the jury necessarily found that Reid shared the specific intent to commit murder.  It is therefore not reasonably likely that the jury that convicted Reid of criminal conspiracy also convicted Reid of first degree murder without finding that he shared the specific intent to commit murder.  Because the trial court's jury instructions accurately set forth the law on accomplice liability, I conclude that the challenged instruction did not result in a conviction in violation of Reid's right to due process and I recommend that this claim be denied.

22

**C.    Trial Court Error for Failing to Properly Instruct the Jury as to Reasonable Doubt**

Reid also argues that the trial court's instruction to the jury regarding reasonable doubt was "confusing and weakened the stringent burden that is 'proof beyond a reasonable doubt.'"  See Pet'r Cons. Amend. Pet. at p. 86.  Reid states that the trial court's instruction "was an invitation to convict on evidence that is simply something more than a 'mere suspicion.'"  Id. at 87.

The instruction that Reid complains of states:

> What is reasonable doubt?  Although the Commonwealth has the burden of proof that the defendant is guilty, this does not mean that the Commonwealth must prove the case beyond all doubt or to a mathematical certainty nor must the Commonwealth demonstrate the complete impossibility of innocence.  A reasonable doubt is the doubt that will cause the reasonable and careful and sensible person to pause, hesitate, or refrain from acting upon a matter of highest importance in his own personal affairs or in his own interest.  A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged.  A reasonable doubt must be real doubt, it may not be an imagined one nor may it be a doubt that is manufactured just to avoid carrying out an unpleasant duty.

> To summarize those principles, you may not find defendant guilty based on the mere suspicion of guilt.  The Commonwealth has the burden [of] proving defendant guilty beyond a reasonable doubt.  If the Commonwealth has met that burden, then defendant is no longer presumed to be innocent and you should find him guilty.  On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty.

(N.T. 4/18/1990 at p. 71-72).  As stated above, the relevant question is whether, the "instruction by itself so infected the entire trial that the resulting conviction violated due process, not merely whether the instruction is undesirable, erroneous, or universally condemned."  Jacobs, 395 F.3d

23

at 111. In reviewing this claim on collateral appeal, the Superior Court found that the instruction "correctly and appropriately stated the Commonwealth's burden of proof, and was sufficient for jury deliberation."  Commonwealth v. Reid, No. 689 EDA 2002, at p. 9. (Pa. Super. July 21, 2003) attached as Resp't Ex. "D."

I agree that trial court's jury instructions correctly and appropriately defined the law regarding "proof beyond a reasonable doubt" and the instruction, taken as a whole, adequately explained the concept of reasonable doubt.  Reid's argument that the trial court's statement that "you may not find defendant guilty based on the mere suspicion of guilt" somehow invited the jury "to convict on evidence that is simply something more than a 'mere suspicion" is simply without merit.  The trial court's instruction regarding reasonable doubt was clear, unambiguous, and accurately stated the burden to be carried by the Commonwealth.

Moreover, the instruction as given by the trial court is essentially a word for word reproduction of Pennsylvania's Suggested Standard Criminal Jury Instruction 7.01, Presumption of Innocence - Burden of Proof - Reasonable Doubt.[7]  As a result, in the context of the overall

---

[7]  7.01  Presumption of Innocence--Burden of Proof--Reasonable Doubt

3. Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt; it may not be an imagined one, nor may it be a doubt manufactured to avoid carrying out an unpleasant duty.

Pennsylvania Suggested Standard Criminal Jury Instructions, 7.01 (Crim) Presumption of Innocence--Burden of Proof--Reasonable Doubt (2005).

charge, I conclude that the challenged instruction regarding burden of proof did not result in a conviction in violation of Reid's right to due process, and I recommend that this claim be denied.

**D.      Ineffective Assistance of Counsel**

Reid next raises multiple claims of ineffective assistance of trial and appellate counsel. Claims of ineffective assistance of counsel are governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687.  Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.

"It is past question that the rule set forth in <u>Strickland</u> qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  <u>Williams</u>, 529 U.S. at 391.  Thus, Petitioner is entitled to relief if the Pennsylvania courts' rejection of his claims was either "contrary to, or involved an unreasonable application of," that established law.

### 1. Failure to object to Jury Instructions on Accomplice Liability and Reasonable Doubt

Reid first complains that trial counsel was ineffective for failing to object to the trial court's instructions regarding accomplice liability and reasonable doubt. As discussed above, Reid maintains that the trial court's instructions regarding accomplice liability and reasonable doubt were deficient, and that trial counsel was ineffective for failing to object to these instructions. In denying this claim, the Superior Court found that the challenged instructions were "abundantly clear" and correctly set forth the requirements for imposing accomplice liability as well as correctly stating the Commonwealth's burden of proof. See Commonwealth v. Reid, No. 689 EDA 2002, at p. 8-9 (Pa. Super. July 21, 2003) attached as Resp't Ex. "D." Consequently, the Superior Court found that counsel could not be found to be ineffective for failing to object to a proper jury instruction. Id. As discussed above, I have concluded that the trial court accurately and clearly stated the law regarding reasonable doubt and accomplice liability. I also conclude that trial counsel can not be found to be ineffective for failing to object to these instructions. See United States v. Sanders, 165 F.3d 248, 253 (3d. Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Accordingly, I find that the state courts determination of this issue is neither contrary to, nor an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d). Reid is not entitled to relief on these claims, and I recommend that this claim be denied.

### 2. Trial Counsel's Failure to Prepare for Cross Examination of Daniel McKay

Reid next claims that trial counsel was ineffective in his cross examination of Daniel

McKay.  Specifically, Reid argues that during an interview with police investigators McKay identified someone other than him as the shooter in an unrelated murder that occurred six days before the murder of Neil Wilkinson and shooting of Darryl Woods in the instant matter.  Reid asserts that trial counsel's failure to cross-examine McKay on his identification of this other man rendered him ineffective.

Daniel McKay was an eyewitness to the murder of Michael Waters in the City of Philadelphia on March 7, 1989, six days before the murder of Neil Wilkinson and shooting of Darryl Woods at issue in the instant matter.  (N.T. 4/16/1989 at 116).  At trial, the Commonwealth presented evidence that the gun used in the murder of Michael Waters was the same gun that was used in the murder of Neil Wilkinson and the shooting of Darryl Woods.  The Commonwealth called Daniel McKay as a witness to establish that Reid had access to the gun used to murder Neil Wilkinson and shot Darryl Woods.  McKay testified that on the evening that Michael Waters was murdered, Reid exited the car that he was driving and walked up to him and asked him a question.  (N.T. 4/16/1989 at p. 120).  McKay testified that Reid stood facing him at a distance of five to six feet away.  (N.T. 4/16/1989 at p. 120).  McKay then testified that after he responded to Reid's question, he watched Reid return to his car, reach inside his coat, and say to one of the men with him "lets get one of them."  (N.T. 4/16/1989 at p. 122).  McKay further testified that he then watched the car drive down the street.  When the car pulled up to the corner, where a group of individuals were standing, the occupants of the car began shooting.  (N.T. 4/16/1989 at p. 126).  Finally, McKay testified that he saw Michael Waters fall to the ground after being shot.  (N.T. 4/16/1989 at p. 127).

As previously stated, Reid argues that Daniel McKay identified someone other than him

27

as the man that approached him and subsequently began shooting on the evening of the murder of

Michael Waters.  The basis for this claim arises from testimony given by McKay in August 1990,

during Reid's trial for the murder of Michael Waters.  See Memo. of Law, July 23, 1999, at p.

21.  During cross examination at that trial, McKay was asked:

> Q.    There came a time a couple of weeks later, a little after lunch time, around 12:18 right, when you and Scott were interviewed down at 29th and Tasker streets inside D20 correct?
>
> A.    Yes.
>
> Q.    What's D20?
>
> A.    It was a police car.
>
> Q.    So they drove by and you sat inside a police car?
>
> A.    Yes.
>
> *      *      *      *
>
> Q.    So you looked at pictures and you picked one out right?
>
> A.    I didn't pick [Reid] out, I said he looks something like [Reid] but it wasn't him.

Reid argues that this testimony is "evidence of the identification by Daniel McKay of someone

other than [him]" as the shooter in the murder of Michael Waters.  Pet'r Amend. Cons. Pet at

p. 89.

As an initial matter, I note that trial counsel could not have been aware of this testimony

at the time of the trial in the instant matter.  The above testimony cited by Reid from his trial for

the murder of Michael Waters was given on August 6, 1990.  Reid's trial in the instant matter

had concluded three months earlier, on April 30, 1990.  In view of this, Reid's argument appears

28

to be that trial counsel in the instant matter (who was also trial counsel in the Waters murder

trial), was ineffective for failing to ask the above questions in the earlier trial at issue here.  The

rationale for this argument appears to be that as Reid views the McKay cross-examination from

the second trial as helpful to him, counsel should have conducted a similar cross-examination of

McKay in the first trial.  Reid contends that counsel was ineffective for not cross-examining

McKay in the same fashion - and presumably eliciting similarly helpful testimony from McKay -

during the trial at issue in this matter.

In finding this claim to be meritless on collateral appeal, the state court found that counsel

was not ineffective for failing to question McKay on his identification of "another man" because

McKay had not, in fact, identified someone other than Reid as the shooter, but had simply picked

out a man that looked something like Reid.  Commonwealth v. Reid, No. 008-012, at p. 15,

(Phila. Court of Common Pleas, May 30, 2002), attached as Resp't Ex. "C."  In making this

determination, the state court noted that after McKay pointed out the individual that resembled

Reid he expressly stated "it wasn't him."  See Id. (quoting N.T. 8/06/1990 at p. 686).  Moreover,

the state court found that notwithstanding the fact that McKay had not identified another man as

the shooter of Michael Waters counsel was not ineffective in his cross examination of McKay

because he made "a strategic decision to limit cross examination of McKay due to the

Commonwealth's strong rebuttal evidence."[8]  Commonwealth v. Reid, No. 689 EDA 2002. at

p. 14 (Pa. Super. July 21, 2003) attached as Resp't Ex. "D."

---

[8]  In support of this finding the state court noted that "the Commonwealth could have
established on redirect that McKay also picked out [Reid's] photo from an array and identified
him at the preliminary hearing in the Waters murder."  Commonwealth v. Reid, No. 008-012, at
p. 16, (Phila. Court of Common Pleas, May 30, 2002), attached as Resp't Ex. "C."

I conclude that the state court determination comports with <u>Strickland</u>.  The testimony that Reid points to in support of his argument that McKay identified someone other than him as Michael Waters' murderer fails to establish this fact.  The testimony plainly indicates that McKay did not identify another man as involved in the Waters shooting, but merely pointed out the photograph of a man whom he believed resembled the shooter.  The testimony also reflects that McKay clearly stated that although the man in the photograph resembled Reid it was not Reid.  Consequently, counsel can not be found ineffective for failing to question McKay about the identification of another man when McKay in fact did not identify another man.

Moreover, I agree with the state court's determination that trial counsel made a sound strategic decision to limit cross examination of McKay.  <u>Id.</u>  The circumstances under which McKay encountered Reid (McKay witnessed the murder of sixteen year old Michael Waters after Waters had thrown a snowball at the car driven by Reid) were particularly damaging to Reid and counsel was wise to limit his questioning of McKay regarding this matter.  As a result, I conclude that counsel was not ineffective in his questioning of Daniel McKay and I recommend that this claim be denied.

## IV.   DISCUSSION OF CLAIMS IN SUPPLEMENT TO CONSOLIDATED AMENDED PETITION FOR WRIT OF HABEAS CORPUS

As noted above, Reid filed a Supplement to his Consolidated Amended Petition for Writ of Habeas Corpus on October 1, 2007.  In this supplement, Reid presented five additional claims for relief that he asserts should be  reviewed on the merits by this Court under Rule 15 of the Federal Rules of Civil Procedure.  Although neither acknowledged nor discussed in his brief to

this Court, Reid presumably is cognizant of the fact that his supplement to his amended petition was filed after AEDPA's one year statute of limitations had expired.  Consequently, in a bid to have these claims reviewed by this Court Reid asserts that "each [claim] offered securely relates back to conduct, a transaction, or an occurrence set forth in the original pleading filed in this Court."  See Pet'r Sup. to Amend. Pet. at p. 3; see also Fed.R.Civ.P. Rule 15(c)(1)(B).

Respondents argue that Reid is not entitled to federal habeas relief on these claims because they are time-barred by AEDPA's one year statute of limitations and that they do not relate back to Reid's original, timely filed Consolidated Amended Petition.

### A.    Statute of Limitations

Section 101 of the AEDPA, effective April 24, 1996, amended habeas corpus law by imposing a one-year limitation period to applications for writ of habeas corpus filed by persons in state custody.  28 U.S.C.A. § 2244(d)(1).  Section 2244, as amended, provides that the one-year limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The amended statute also provides that the time during which a properly

filed application for state post-conviction or other collateral review is pending shall not be

counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).

In the instant case, the applicable starting point for the statute of limitations is "the date

on which the judgment became final by the conclusion of direct review or the expiration of the

time for seeking such review."  Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).  Reid's

conviction became final on June 22, 1994, when the time for filing a writ of certiorari to the

United States Supreme Court expired.  See S.Ct.R. 13(1) (petitioners have ninety (90) days to file

a petition for a writ of certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999).  Because

his conviction became final prior to April 24, 1996, the effective date of the AEDPA, Reid would

have had until April 24, 1997, to timely file his § 2254 petition.  Duncan v. Walker, 533 U.S. 167

(2001) ("in the context of AEDPA's 1-year limitations period, which by its terms runs from the

'date on which the judgment became final,' see § 2244(d)(1)(A), the Courts of Appeal have

uniformly created a 1-year grace period, running from the date of AEDPA's enactment, for

prisoners whose state convictions became final prior to AEDPA"); Burns, 134 F.3d at 111-12.

However, on December 12, 1996 – 220 days into the federal statute of limitations – Reid

filed his first PCRA petition.  Because this petition was filed in accordance with Pennsylvania's

procedural requirements, it is considered a "properly filed application" for post-conviction relief,

thereby tolling the one year limitation period.  See 28 U.S.C. § 2254(d)(2) (the time during which

a "properly filed application" for state post-conviction review is pending shall not be counted

toward the one year period of limitation); Artuz v. Bennett, 531 U.S. 4 (2000) ("an application is

'properly filed' when its delivery and acceptance are in compliance with the applicable laws and

rules governing filings" such as "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee").  Such a petition is considered "pending" within the meaning of § 2244(d)(2) during the time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions whether or not such review was actually sought.  See Swartz, 204 F.3d at 424.  Reid's petition was thus pending until March 4, 2004, when the Pennsylvania Supreme Court denied allocatur.  At this time, the one year grace period began to run again, and Reid had 145 days, or until July 17, 2004, to file a timely § 2254 petition.  See Johnson v. Hendricks, 314 F.3d 159, 162 (3rd Cir. 2002), cert. denied., 538 U.S. 1022 (2003) (28 U.S.C. § 2244(d)(2)'s tolling provision does not reset date from which the applicable one year limitations period begins to run).

Reid timely submitted his original petition, entitled Consolidated Amended Petition for Writ of Habeas Corpus for filing on July 1, 2004, leaving himself sixteen days, or until July 17, 2004, in which to timely file any additional claims.[9]  Reid filed his Supplement to Amended Petition for Writ of Habeas Corpus on October 1, 2007, over three years after the limitation period had expired.[10]  Reid does not assert that any type of "state action" presented an

---

[9]  I note that this Court placed this matter in civil suspense on August 12, 2005. (Doc. #22).  As this occurred after the federal statute of limitations had run, it does not factor into the timeliness analysis.

[10]  On April 29, 2004, Reid filed a second PCRA petition.  This petition was deemed untimely and thus, was not "properly filed."  See 28 U.S.C. § 2254(d)(2) (the time during which a "properly filed application" for state post-conviction review is pending shall not be counted toward the one (1) year period of limitation); Artuz v. Bennett, 531 U.S. 4 (2000) ("an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" such as "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee").

impediment to filing the claims contained in his supplement to his consolidated amended habeas

petition, nor does he assert that the claims contained in his supplemental petition involve a right

which was newly recognized by the United States Supreme Court.  See 28 U.S.C. §

2244(d)(1)(B)-(C).

However, Reid does assert that he is in possession of newly discovered evidence that

should be "included in the investigation and presentation of post conviction evidence of [his]

innocence."  See Pet'r Supp. to Amend. Pet. at p. 6; see also 28 U.S.C. § 2244(d)(1)(D).  The

alleged new evidence consists of an affidavit authored by Thomas Jordan, a fellow inmate of

Reid's at the State Correctional Institution at Greene.  Jordan claims to have been present at the

scene of the murder of Neil Wilkinson and shooting of Darryl Woods.  Reid represents to this

Court that the affidavit of Thomas Jordan contains statements that establish that he is actually

innocent of the crimes for which he has been convicted.[11]

Reid presented this claim for the first time in his second PCRA petition which was

_____

Consequently, the time during which this second, untimely petition was pending would not
impact this Court's calculations regarding the one (1) year limitation period.

[11]  The relevant portion of the Jordan affidavit states:

> I, witnessed the incident on March 13, 1989, which Mr. Anthony Reid was
> mistakenly charged with.  I was leaving a friend's house on the 13th of
> March at or around 3:00 AM going to the store.  I seen a lightskin brother
> coming out of the projects carrying a shotgun and going towards a dark
> colored car.  I stopped, uncertain if he was going towards me.  He then
> proceeded to his car and put the shotgun inside and got inside and drove
> away.
>                                        ***
> Mr. Reid is not the person that I witnessed leaving the projects carrying a
> shotgun or driving away.

See Affidavit of Thomas Jordan at p. 1.

dismissed as untimely on April 29, 2005.  <u>Commonwealth v. Reid</u>, No. 1650 EDA 2005 (Pa.

Super. June 2, 2006).  In affirming the dismissal of this petition, the Superior Court discussed

Reid's newly discovered evidence claim as it related to the exception set forth in 42 Pa.C.S. §

9545(b)(1)(ii) and (b)(2)[12] which allows for review of an untimely PCRA petition when "the facts

upon which the claim is predicated were unknown to the petitioner and could not have been

ascertained by the exercise of due diligence."  <u>See</u> 42 Pa.C.S. § 9545(b)(1)(I)-(iii).  Due diligence

requires that the claim must be "filed within 60 days of the date the claim could have been

presented."  <u>See</u> 42 Pa.C.S. § 9545(b)(2). The Superior Court found that Reid became aware of

the Thomas Jordan affidavit when his attorney informed him of its existence on November 19,

2003.  <u>Commonwealth v. Reid</u>, No. 1610 EDA 2005, at p. 6 (Pa. Super. June 2, 2006).  Reid

---

[12] 42 Pa.C.S.A. § 9545 Jurisdiction and Proceedings

(b) Time for filing petition.--

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

subsequently waited until April 29, 2004, approximately five months later, to present this claim to the state courts.  Consequently, the Superior Court found that Reid failed to timely assert this claim within the prescribed sixty days of becoming aware of the Jordan affidavit and dismissed this claim as untimely.  Id.

The date on which the factual predicate of Reid's newly discovered evidence claim could have been discovered, and indeed was discovered, is November 19, 2003, when Reid's attorney advised him of the existence of the Jordan affidavit.  28 U.S.C. § 2244(d)(1)(D).  This claim was not asserted in this Court until October 1, 2007, almost four years after Reid became aware of the Jordan affidavit.  Indeed, this claim was not asserted in this Court until over two years after Reid had submitted his original habeas petition on March 21, 2005.  Clearly, Reid was aware of the Jordan affidavit prior to the expiration of AEDPA's one year statute of limitations.  Thus, Reid does not meet the newly discovered evidence exception to the statute of limitations, and is barred from presenting the claims contained in his Supplement to his Amended Petition under § 2254, unless the claims are subject to equitable tolling.

**B.      Equitable Tolling**

The United States Supreme Court has not decided whether equitable tolling is available in the context of a federal habeas petition.  See, e.g., Lawrence v. Florida, 549 U.S. 327, 336 (2007) ("[w]e have not decided whether § 2244(d) allows for equitable tolling").  However, the Third Circuit has ruled that the one year period of limitation for § 2254 is subject to equitable tolling, because this limitation period is a statute of limitations and not a jurisdictional bar.  See Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1988).

In assuming that equitable tolling is available, the Supreme Court has stated that a litigant

36

bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Lawrence, 549 U.S. at 336 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (requiring that plaintiff has "in some extraordinary way" been prevented from asserting his rights).

I do not find the instant matter to be one of the "rare situation[s] where equitable tolling is demanded by sound legal principals as well as the interests of justice." See Jones, supra. Reid presents us with no evidence that he either diligently pursued his claims, or that he was prevented in some extraordinary way from doing so. Because Reid has not established "extraordinary" circumstances which would justify application of equitable principles, I conclude that there are no circumstances which would make the rigid application of the limitation period unfair. Consequently, the claims contained in Reid's supplement to his consolidated amended petition must be dismissed as untimely.

As I have found that the claims presented in Reid's supplement to his amended petition are barred by AEDPA's one year statute of limitations, the only way in which these claims may be reviewed is if they relate back to his original timely filed petition.[13] As stated above, Reid asserts that the claims presented in the supplement to his amended petition should be considered by this Court through operation of Rule 15 of the Federal Rules of Civil Procedure.

Under Federal Rule of Civil Procedure 15(c)(1)(B), a party may raise a new claim that would have been barred by the statute of limitations if the claim "arose out of the conduct,

---

[13] The Federal Rules of Civil Procedure apply to amendments to petitions for Writ of Habeas Corpus. See United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999).

37

transaction, or occurrence set out – or attempted to be set out – in the original pleading." See Fed.R.Civ.P. 15(c)(1)(B).  In discussing what constitutes "conduct, transaction, or occurrence" for purposes of relation back analysis in the context of a habeas petitioner, the Supreme Court has stated that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 545 U.S. 644, 664 (2005); Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009).  However, an amended petition "does not relate back (and therefore escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650; Hodge, 554 F.3d at 378.  In Mayle, the petitioner was convicted of murder and robbery and sentenced to life in prison.  Petitioner timely filed a habeas petition within AEDPA's one-year statute of limitations, arguing that the admission of a videotaped witness statement at trial violated his Sixth Amendment right to confront witnesses against him. Id. at 649, 651.  Later, after the AEDPA's statute of limitations had expired, petitioner filed an amended petition which included a new claim asserting that inculpatory statements made by him during a police interrogation were coerced thereby violating his Fifth Amendment right against self incrimination. Id. at 651-52.  The Court found that the new claim contained in the amended petition was untimely and did not to relate back to the original petition because the amended petition asserted a new ground for relief that differed in "time and type" from the original claim for relief. Id. at 650.  In reaching this holding in Mayle, the Supreme Court expressly rejected the proposition advanced by Reid, that the claims set forth in his amended petition relate back to the original petition because the claims arose from the same flawed trial and conviction complained of in the original petition. Id.; see also Supp. to

Amend. Pet. at p. 3.  The relevant question, therefore, is whether each of the claims contained in

Reid's supplement to his amended petition "are tied to a common core of operative facts."  Id. at

664.

 As noted above, Reid has advanced five additional claims in his supplement to his

amended petition: one claim of newly discovered evidence; three claims of trial court error; and

one claim of ineffective assistance of counsel.  See Pet'r Supp. to Amend. Pet.  Reid's original

habeas petition alleged: one claim of prosecutorial misconduct; two claims of trial court error for

improper jury instructions; two claims of ineffective assistance of counsel for failing to object to

jury instructions; and one claim of ineffective assistance of counsel for failing to properly

question witness Daniel McKay.

 **C.** **Newly Discovered Evidence**

 The first claim presented in Reid's supplement to his amended petition is that he is in

possession of newly discovered evidence that establishes his innocence.  Although Reid asserts

that "each amendment offered [in his supplement] securely relates back to conduct, transaction,

or an occurrence set forth in the original pleading," he fails to argue how his newly discovered

evidence claim relates back to his original petition.  Instead, Reid argues that this Court should

consider this claim because the "trial court dismissed the claim on timeliness grounds" and "the

time was calculated incorrectly."  See Pet'r Supp. to Amend. Pet. at p. 4.  As I have discussed the

timeliness of Reid's newly discovered evidence claim in the above discussion relating to the

exception to AEDPA's one year statute of limitations, it is not necessary to respond to his

argument that the trial court incorrectly dismissed this claim on timeliness grounds.  I reiterate

that I find this argument to be without merit.

I also conclude that this claim does not relate back to the original petition because it asserts a new ground for relief that differs in both time and type from the claims asserted in the original habeas petition.  <u>Mayle</u>, 545 U.S. at 650.  Reid's claim that he is actually innocent of the crimes for which he has been convicted is unrelated to any of the claims asserted in his original habeas petition, and is supported by an affidavit produced thirteen years after his conviction.  The facts supporting this new claim differ in both time and type from the original petition. Therefore, I conclude that this claim does not qualify for relation back and should be dismissed as time-barred under AEDPA's one-year statute of limitations.

> **D.** **Trial Court Error**

Reid also asserts three claims of trial court error in his supplement to his amended petition.  Yet, again, Reid fails to state specifically how each of these claims relate back to the claims contained in his original habeas petition.  Indeed, Reid fails to even mention the Supreme Court's decision in <u>Mayle</u>, and fails to explain how the standard it has set out for relation back analysis applies to his supplemental claims.  Instead, Reid relies upon the general proposition that "[t]he amended habeas that serves as the 'original pleading' for the purposes of relation back analysis was constructed to make specific and clear the incidents that were serious and chronic in the trial that resulted in the denial of fair and due process."  Pet'r Supp. to Amend. Pet. at p. 3. Respondents, on the other hand, point out that the claims contained in Reid's supplement to his amended petition are inconsistent with the decision in <u>Mayle</u> and fail to relate back to the original petition.  <u>See</u> Resp't Resp. to Supp. Amend. Pet. at p. 5.

> **1.** **Trial Court Error for Admitting Massive Amounts of Hearsay and Unsubstantiated Fact**

In his first claim of trial court error, Reid asserts that the trial court erred in "admitting massive amounts of hearsay and unsubstantiated fact" that resulted in the denial of a fair trial. See Pet'r Supp. to Amend. Cons. Pet. at p. 6.   Specifically, Reid argues that the admission of the "respective and collective testimony" of several detectives that interviewed Darryl Woods while he was in the hospital recovering from being shot, should not have been admitted at trial.   Id. This claim is based upon the fact that at trial, the Commonwealth sought to impeach the testimony of its witness, Darryl Woods, one of the victims in the instant matter, after Woods testified that the statements recorded by police investigators bearing his signature were not made by him.   After Woods disavowed the statements attributed to him, the trial court permitted the Commonwealth to question the police investigators regarding the signed statements that they testified were made by Woods. Although not stated explicitly by Reid, the crux of this argument is that the trial court erred in allowing police investigators to testify about the substance of the statements that Woods disavowed.   Reid further contends that this error was compounded by allowing the jury to consider the police investigators statements as substantive evidence.   In his original habeas petition Reid raised a claim based upon the admission of Darryl Woods' statements as substantive evidence, but that claim was presented under a theory of prosecutorial misconduct for improperly questioning Darryl Woods himself about the substance of his statements.

I conclude that these claims are not sufficiently related under the standard set out in Mayle.   These claims are each supported by different facts.   The claim as set out in the original petition is based upon the conduct of the prosecutor at trial.   The dispositive question regarding this claim is whether the prosecutor's conduct at trial resulted in a violation of Reid's right to due

process.  The claim as presented in the Reid's supplement is based upon a question of admissibility of evidence.  The dispositive question regarding this claim is whether the trial court erred in allowing police investigators to testify about the substance of Woods' statements and whether this evidence was properly admitted as substantive evidence.  These claims are based upon two distinct factual predicates and thus do not share a common core of operative facts. Mayle, 545 U.S. at 664.  Consequently, I conclude that this claim does not relate back, and should be dismissed.

> ### 2.   Trial Court Error for Admitting the Statements of Darryl Woods as Substantive Evidence

Reid next claims that the trial court erred in admitting the statements made by Darryl Woods and recorded by police investigators as substantive evidence.  Reid argues that at trial "Woods disagreed that the vast portion of the five memos [recorded by the police investigators] represented his own statements."  See Pet'r Supp. to Amend. Pet. at p. 8.  Consequently, Reid argues that as Woods denied making any statements to police and did not "authenticate the statements" as being his own, the trial court erred in allowing the jury to consider the statements as substantive evidence.  Id. at p. 8-9.  As described above, Reid raised this claim in his original habeas petition under a theory of prosecutorial misconduct for improperly questioning Darryl Woods about the substance of his statements.  For the same reasons as discussed above I find that this claim is not sufficiently related to the original petition under the standard set out in Mayle. As above, the claim presented in the original habeas petition concerns the conduct of the prosecutor at trial, while the instant claim contained in Reid's supplement concerns a trial court ruling regarding the admissibility of evidence.  As these claims fail to share a common core of

operative facts I conclude that this claim does not relate back and recommend that it be dismissed.  Mayle, 545 U.S. at 664.

### 3.        Trial Court Error for Admitting Evidence of Other Crimes

In his last claim of trial court error, Reid argues that the trial court erred in admitting evidence of other crimes.  Although not specifically stated in his brief to the Court, Reid appears to be objecting to the admission of testimony into evidence regarding the murder of Michael Waters.  As discussed earlier, the Commonwealth elicited testimony regarding the shooting and murder of Michael Waters in order to establish that Reid had access to the gun that was used in both the Waters murder and the shooting and murder at issue in the instant matter.  In his original habeas petition Reid raised this claim under a theory of prosecutorial misconduct.  Specifically, Reid claimed that the prosecutor committed misconduct when he improperly elicited testimony and produced evidence regarding the shooting and murder of Michael Waters.  In his supplement to his amended petition, Reid presents this claim under a theory of trial court error for admitting evidence regarding the shooting and murder of Michael Waters.

I conclude that these claims are also not sufficiently related under the standard set out in Mayle.  These claims, as the claims above, are each supported by different facts.  Again, the claim as set out in the original petition is based upon the conduct of the prosecutor at trial and the claim as presented in Reid's supplement is based upon a question of admissibility of evidence.  These claims are based upon two distinct factual predicates, and do not share a common core of operative facts.  Consequently, I conclude that this claim does not qualify for relation back and should be dismissed.

### E.    Ineffective Assistance of Counsel

Finally, Reid alleges that trial counsel was ineffective for failing to rebut the testimony of police investigators with Darryl Woods' hospital records.  This claim is based upon the fact that at trial, Darryl Woods testified that when he was interviewed by police investigators in the hospital after being shot, he would have been capable of signing his name to any statements that had been recorded by them.  Thereafter, police investigators testified that Woods was incapable of signing his name to the police statements due to his injuries.  Reid argues that trial counsel was ineffective for failing to cross-examine these police investigators with Woods' hospital records which he claims would establish that Woods was capable of signing his name at the time the police recorded his statements.

I conclude that this claim does not properly relate back because the facts supporting this new claim differ in both time and type from the claims asserted in the original petition.  Mayle, 545 U.S. at 650.  This claim asserts that trial counsel was ineffective for failing to cross-examine police investigators about the particular issue of Darryl Woods' statements to police with a particular piece of evidence, Darryl Woods' hospital records.  Nowhere in Reid's original habeas petition does he assert that trial counsel was ineffective in his cross-examination of police investigators.  To be sure, Reid does assert three claims of ineffective assistance of trial counsel in his original petition, but the factual basis supporting those claims involves the failure of counsel to object to jury instructions relating to accomplice liability and reasonable doubt, as well as the failure of counsel to question a different witness, Daniel McKay, about his identification of Reid.  The facts supporting this new claim of ineffective assistance of  differ in both time and type from the original petition.  Mayle, 544 U.S. at 644.  As a result, I conclude

44

that this claim does not relate back to the original habeas petition, and should be dismissed as time-barred.

Therefore, I make the following:

## **RECOMMENDATION**

AND NOW, this ___9TH___ day of April, 2009, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DISMISSED.  There has been

no substantial showing of the denial of a constitutional right requiring the issuance of a certificate

of appealability.

The petitioner may file objections to this Report and Recommendation.  See Local Civ.

Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


**BY THE COURT:**


 **/s/ Lynne A. Sitarski**_____
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**